STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-07-262

WILLIAM NEILY,
                    Plaintiff

v.                                                DECISION ON
                                                  STIPULATED FACTS
STATE OF MAINE and
STATE OF MAINE
OFFICE OF THE STATE CONTROLLER,
                    Defendants


Before the Court are the parties' stipulated facts relating to Plaintiff William Neily's three-count Complaint against the State of Maine and the State of Maine Office of the Controller.

## BACKGROUND

The facts as stipulated to by the parties are as follows. Neily was employed as a Boiler Inspector in the Office of Licensing and Registration, Maine Department of Professional and Financial Regulation, from November 2, 2002 to November 3, 2006. The position of Boiler Inspector was established in July 2002 and assigned to the Administrative Services bargaining unit of the Maine State Employees Association / Service Employees International Union Local 1989 ("MSEA/SEIU").[1] Pursuant to 5 M.R.S.A. § 7051 et seq., the State performed an analysis in July 2002 to determine the salary range for the Boiler Inspector position, which was in effect at the time Neily concluded his employment with the State and was the basis for his final pay.

---

[1] The Boiler Inspector position was moved to the Professional and Technical Services bargaining unit in March 2006.

In March 2001, the State and the MSEA/SEIU hired a consulting firm to perform a market pay analysis. The purpose of the market pay analysis was to determine which State classifications of employees in bargaining units represented by the MSEA/SEIU were paid more than 10% below the market average. The State and the MSEA/SEIU agreed that employees in classifications whose pay was less than 90% of the market would be provided with a market pay adjustment to bring their pay up to 90% of market level. On June 20, 2001, the State and the MSEA/SEIU executed a Memorandum of Agreement ("MOA") that identified those classifications that would receive a market pay adjustment, set forth the amount of the adjustment, and specified how the adjustment would be administered. On June 21, 2001, the State and the MSEA/SEIU entered into a collective bargaining agreement for the period July 1, 2001 through June 30, 2003 (the "CBA"). In December 2001, the State and the MSEA/SEIU executed an Addendum to the MOA, which set forth market pay adjustments for identified supervisory classifications and other classifications. The adjustments set forth in the MOA and the Addendum remained in effect through the period of Neily's employment with the State. The Boiler Inspector position was not included in the classifications identified in the MOA or in the Addendum. Nor was the Boiler Inspector position included in the Administrative Services Job Classifications covered by the CBA.

The MOA and the Addendum were funded by the Legislature in P.L. 2001, chapter 438 ("chapter 438"), which states in relevant part:

> Sec. A-1. Costs to General Fund. Costs to the General Fund must be provided in the Salary Plan program...to implement the economic terms of the collective bargaining agreements, including market and pay equity adjustments and benefits, made between the State and the Maine State Employees Association.

* * *

> Sec. A-6.  New employees; similar and equitable treatment. Employees in classifications included in bargaining units referred to in sections 1 and 2 of this Part but who are excluded from collective bargaining pursuant to the Maine Revised Statutes, Title 26, section 979-A, subsection 6, paragraphs E and F must be given equitable treatment on a pro rata basis similar to that treatment given employees covered by the collective bargaining agreements.

(26 M.R.S.A. § 979-A(6) sets forth the definition of "State employee" and excludes from that definition a person who "has been employed less than six months.")

The State implemented the requirements of Section A-6 of chapter 438 through pro rata adjustments to wage scale, medical and dental benefits, sick leave and holidays to all new employees, including Neily. Market pay adjustments were granted only to employees occupying positions in classifications listed in the MOA and the Addendum. No market pay analysis was conducted by the State for the Boiler Inspector position and no market pay adjustment was ever made.

Neily now seeks unpaid wages from the State. He asserts three counts in his Complaint: violation of chapter 438; violation of 26 M.R.S.A. § 626; and violation of the Equal Protection Clauses of both the United States and Maine Constitutions.

## DISCUSSION

### I.    P.L. 2001, Chapter 438

Neily concedes that the State had no contractual obligation to pay him the wages he now seeks. Instead, Neily argues that the State had a statutory obligation to pay him pursuant to chapter 438. Neily states the directive of chapter 438, section A-6 is clear: to give new employees (including Neily)

3

equitable treatment on a pro rata basis similar to that given to employees covered by the CBA.

As an initial matter, the State argues that the doctrine of *res judicata* applies and bars Neily's arguments with respect to chapter 438 because Neily previously attempted to argue that he was owed additional wages under chapter 438 before the Maine Labor Relations Board ("MLRB"), but his complaint was dismissed on the basis that the action was time-barred.[2] While the Court acknowledges the State's argument, it declines to decide Neily's chapter 438 claim on this basis. For the reasons stated herein, however, the Court finds that Neily has no claim under chapter 438.

Neily argues that the State has violated chapter 438 by refusing to pay him in a similar and equitable manner as other State employees. The Court disagrees. Indeed, the language of section A-6 clearly states that it applies to "[e]mployees in classifications included in bargaining units referred to in sections 1 and 2 of this Part." Sections A-1 and A-2 reference the CBA entered into between the State and the MSEA/SEIU and a separate collective bargaining agreement between the State and the Maine State Troopers Association, which is not relevant here. The parties have stipulated that the Boiler Inspector position was not established until July 2002, a full year after the MOA and the CBA were executed. Thus, employees in the Boiler Inspector classification do not derive any rights from chapter 438 because, by its own terms, chapter 438 does not apply to them.

---

[2] The Law Court affirmed the decision of the MLRB to dismiss. *Neily v. Maine Labor Relations Board*, Mem-07-89 (May 15, 2007).

Moreover, neither the MOA, the CBA, the Addendum or chapter 438 provide for any ongoing market pay analyses to be done. Rather, each provides for the implementation of market pay adjustments based on the market pay analysis previously conducted. As Neily's Boiler Inspector position did not exist at the time the market pay analysis was done and as nothing in the MOA, the CBA, the Addendum or chapter 438 requires the State to perform market pay analyses in the future, Neily was not entitled to a market pay analysis or a market pay adjustment.

The essence of Neily's chapter 438 argument is that section A-6 demands that new employees be treated similarly and equitably compared to employees covered under the MOA, the CBA and the Addendum. Thus, Neily argues, because employees in classifications covered by collective bargaining received market pay adjustments, so should he. Neily, however, ignores the fact that his classification (Boiler Inspector) was not one of those classifications included in the MOA, the CBA or the Addendum. A new employee hired into a classification that had been granted a market pay adjustment under collective bargaining would receive that adjustment even though that new employee was not covered by collective bargaining at the time. But this is not a case where one Boiler Inspector received a market pay adjustment while Neily did not. No Boiler Inspector received a market pay adjustment (and, indeed, no one could have received one since the position did not exist until July 2002). Thus, Neily was treated similarly and equitably compared to other employees in his classification and there has been no violation of chapter 438.

5

## II.    26 M.R.S.A. § 626

Neily argues that the State's failure to pay wages due to him under chapter 438 is a violation of 26 M.R.S.A. § 626, which states in relevant part that "[a]ny employee leaving employment must be paid in full within a reasonable time after demand." In Neily's own words, "In this case, the dispute is over Defendants' decision not to pay Plaintiff a market pay adjustment similar to those paid by the Defendants to all other employees meeting certain requirements set down in 2001." Plaintiff's Brief on the Merits, page 15. As set forth in section I *supra*, Neily was not entitled to a market pay analysis or market pay adjustment pursuant to the 2001 collective bargaining that led to the MOA, the CBA, the Addendum and chapter 438. As such, Neily has no claim under 26 M.R.S.A. § 626.

## III.    Equal Protection Clauses

Finally, Neily argues that his rights under the Equal Protection Clauses of both the Maine Constitution and the United States Constitution have been violated by the State's refusal to grant him a market pay adjustment as required by chapter 438's "similar and equitable treatment" language. Neily argues that "[t]here demonstrably exists only the single group consisting of new employees under section A-6 of the statute [chapter 438], and there exists only the single standard of granting those new employees the same treatment as existing employees." Plaintiff's Brief on the Merits, pages 20-21. Neily overlooks, however, the language of chapter 438, section A-6 limiting its application to only those "employees in classifications included in bargaining units...but who are excluded from collective bargaining [because they are new employees]." The

parties have stipulated that Neily's classification was not included in those classifications covered by the MOA, the CBA and the Addendum. For the reasons set forth in section I *supra*, this Court holds that chapter 438, by its terms and by the parties' stipulation, does not apply to Neily and grants him no rights. Thus, Neily has not been deprived of his right to the equal protection of the law.

Therefore, the entry is:

> Judgment for the State of Maine and the State of Maine Office of the State Controller on the parties' stipulated facts.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___2nd___ day of ___May___, 2008.

Robert E. Crowley
Justice, Superior Court

7

F COURTS
ind County
3ox 287
ne 04112-0287

WILLIAM NEILY
47A NORTH ST
GORHAM ME 04038

)F COURTS
and County
Box 287
ine 04112-0287

WILLIAM LAUBENSTEIN III AAG
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006